UNITED STATES BANKRUPCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:　　　　　　　　　　　　　　　　　　　　)
　　　MARY ANN WALSH,　　　　　　　　　　　)　　Chapter 11
　　　　　　　Debtor　　　　　　　　　　　　　)　　No. 09-16031-WCH
　　　　　　　　　　　　　　　　　　　　　　　)

PRELIMINARY DECISION ON CONFIRMATION OF
AMENDED PLAN OF REORGANIZATION

*Background*

Mary Ann Walsh ("Debtor") filed her petition under Chapter 11 of the Bankruptcy Code on July 29, 2009. She owns and operates 56 residential apartments in five locations in Barnstable County and owns a home and a vacation property (collectively the "Properties").

The Properties are encumbered by a variety of mortgages. With the exception of mortgages in favor of Corinth Investors Trust ("Corinth"), the Debtor has reached accommodation with her various secured creditors.

On October 13, 2010, Debtor filed her Amended Disclosure Statement (the "Disclosure Statement") and Amended Chapter 11 Plan (the "Plan").[1] The Plan established seven classes of secured creditors, Class 8 for general unsecured claims, and Class 9 for Debtor's Equity Interest. The secured creditors were to be paid as provided in the plan, by a deed in lieu of foreclosure (or surrender), payment from the proceeds of the sale of the particular property involved, as agreed by the creditor, or as ordered by the Court.

---

[1] Docket No.s 136, 137.

1

The unsecured claims were to receive 5% over five years.  As to the Debtor's Equity Interest, the Plan provides that the Properties shall re-vest in the Reorganized Debtor at the effective date of the plan.

Corinth filed a limited objection to Debtor's original disclosure statement which was carried over as applicable to the Disclosure Statement.  On October 26, 2010, I entered an order[2] approving the Disclosure Statement.  Corinth's objection was overruled as to the Disclosure Statement but preserved as an objection to confirmation of the Plan.[3]  Corinth, as a secured creditor in Class 6, and an unsecured creditor in Class 8 (assuming a deficiency) cast negative votes on the Plan.  The issues preserved relate to the applicability of the Absolute Priority Rule to confirmation of Debtor's plan, the enforceability of the dragnet clause contained in three mortgages,[4] the issue of merger of title to the South Cape Property, and the valuation of the Marshfield Property.

A hearing on the Plan was scheduled for January 25, 2011.  Unfortunately, counsel for Corinth became ill on that date and was unable to be present.  However, armed with the PTS, I took the matter under advisement as to the legal issues involving the Absolute Priority Rule and the effect of the dragnet clauses and ordered that the evidentiary hearing would be rescheduled after issuance of an opinion as to those issues.[5]  This is the promised opinion.

---

[2] Docket No.147.
[3] Docket No. 147, ¶ 2; 11 U.S.C. § 1128(b).
[4] The PTS actually reserves this issue as to one mortgage only. PTS ¶IV(A). I assume that an economic issue exists as to that mortgage only, but the legal analysis would apply to all three mortgages.
[5] Docket Nos. 197-200.

2

*The Absolute Priority Rule*

If the result of creditor votes in Class 8 show that class to have rejected the plan (it may depend on the amount of Corinth's deficiency) the Plan may nonetheless be confirmed so long as it is, among other things, "fair and equitable."[6]

Before the enactment of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"),[7] "fair and equitable", as applicable here, required that

> the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.[8]

Because Debtor is the holder of an interest that is junior to Class 8, the impaired class of unsecured claimants, and she proposes to retain the Property on account of her interest, the Plan could not be confirmed under the prior version of the statute unless the so-called "new value exception" was satisfied.[9] However, BAPCPA added language to the subsection specifically addressed to the individual Chapter 11 debtor, some of which I have added here in italics:

> The holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, *except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115.* . . .[10]

---

[6] 11 U.S.C. 1129(b).
[7] Pub.L. No. 109-8 (2005).
[8] 11 U.S.C. § 1129(b)(2)(B), prior to amendment.
[9] *See generally* 1 WILLIAM C. HILLMAN AND MARGARET M. CROUCH, BANKRUPTCY DESKBOOK § 11:8.2[B] (4th ed. 2010). I held that the absolute priority rule applied in individual chapter 11 cases prior to BAPCPA. *In re* Shepcaro, 144 B.R. 3 (Bankr. D. Mass. 1992).
[10] 11 U.S.C. § 1129(b)(2)(B) in part. I have omitted the "subject to" provision cross referencing § 1129(a)(14) as not relevant to this case.

This change has resulted in a variety of decisions from courts regarding whether the Absolute Priority Rule still applies to individual chapter 11 debtors. To answer the question, we must next examine the meaning of "property included in the estate under section 1115" which is hardly free from doubt.

Section 1115(a) provides (emphasis added)

> In a case in which the debtor is an individual, property of the estate includes, *in addition to the property specified in section 541*---
>
> (1) all property of the kind specified in section 541 that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13, whichever occurs first.

In the *Shat* decision, Judge Markell provided us with an extensive study of this issue. In connection with an interpretation of "included," which is the key to the interpretive problem, he said

> If "included" means only property which is added by Section 1115, then Section 1129(b)(2)(B)(ii) has a very narrow meaning: it refers only to postpetition income from services---and not to property originally specified in Section 541. Section 1115, however, itself includes Section 541(a) property. Thus, "included" could refer to all property Section 1115 itself references, and this would then be a reference to the superset of Section 541(a) property *and* the debtor's postpetition service income. Put another way, if Section 1115 entirely supplants Section 541 by specifically incorporating it and adding to it, the "included" has a very broad meaning, essentially exempting individuals from the absolute priority rule as to unsecured creditors.[11]

I have several problems with this characterization. First of all, Section 1115 deals with something more than post-petition income from services---it also brings in property described in section 541 but which is acquired post-petition. Second,

---

[11] *In re* Shat, 424 B.R. 854, 863 (Bank. D. Nev. 2010) (emphasis in original).

4

because it deals with post-petition section 541(a) property (a most awkward construction), Section 1115 does *not* include section 541(a) property as such.

In any event, Judge Markell concludes that

> Given the relatively straightforward reading of the statute supporting the broader reading, and the general rehabilitative aim of chapter 11, the court understands the phrase "in addition to the property specified in section 541" to mean that Section 1115 absorbs and then supersedes Section 541 for individual chapter 11 cases. This construction, in turn, leads to the position that Section 1129(b)(2)(B)(ii)'s exception extends to *all* property of the estate, including such things as prepetition ownership interest of non-exempt property.[12]

I must disagree. I join instead with Judge Tchaikovsky, who held that

> Notwithstanding the thorough and thoughtful analysis by the *Shat* court, the Court is unable to agree with its conclusion. If the Court were writing on a clean slate, it would read the phrase "included in the estate under section 1115" to be reasonably susceptible to only one meaning: i.e., added to the bankruptcy estate by § 1115.
>
> Section 103(a) provides that § 541 applies in a chapter 11 case, including an individual chapter 11 case. Section 541 provides that, when a petition is filed, a bankruptcy estate is created, consisting of the debtor's pre-petition property. Section 1115 provides that, in an individual chapter 11 case, in addition to the property specified in § 541, the estate includes the debtor's post-petition property. If the clause referring to § 541 had not been included in § 1115 and if § 1115 had merely stated that an individual chapter 11 debtor's estate included post-petition property, the argument could have been made that an individual chapter 11 debtor's estate did not include his pre-petition property.[13]

Debtor flatly asserts that the Rule is inapplicable.[14] As I have concluded otherwise, and assuming the existence of a dissenting class, Debtor will be required to confirm her plan by satisfying § 1129(b) .[15]

---

[12] *Id*. at 865 (emphasis in original). Reaching the same conclusion are *In re* Tegeder, 369 B.R. 477, 480 (Bankr. D. Neb. 2007) and *In re* Roedemeier, 374 B.R. 264, 276 (Bankr. D. Kan. 2007).

[13] *In re* Gbadebo, 431 B.R. 222, 229 (Bankr. N.D. Cal. 2010). To the same effect, *In re* Gelin, 437 B.R. 435, 441 (Bankr. M.D. Fla. 2010); *In re* Mullins, 435 B.R. 352, 360 (Bankr. W.D. Va. 2010); *In re* Karlovich, ___ B.R. ___, 2010 WL 5418872 at *4 (Bankr. S.D. Cal. Nov. 16, 2010).

[14] PTS ¶1A(B).

*The Dragnet Clauses*

Debtor and various trusts in which she had an interest granted three mortgages to Cape Cod Cooperative Bank ("Cape Cod Bank") covering various of the Properties. The first ("CCC 1 Mortgage") secured a note ("CCC 1 Note") in which "Borrower" is defined as the Debtor individually and as trustee of the Cape Cod Vacation Realty Trust ("CCVR Trust').[16] The CCC 1 Mortgage defines "Grantor" as the Debtor in her capacity of trustee of the CCVR Trust and the "Borrower" as the Debtor and the CCVR Trust as well as co-signers and co-makers signing the CCC 1 Note.[17]

The second ("CCC 2 Mortgage") secured a note ("CCC 2 Note") in which the "Borrower" is described as the Debtor and South Cape Trust, Mary Ann Walsh Trustee.[18] The CCC 2 Mortgage defines "Grantor" as South Cape Trust, Mary Ann Walsh Trustee. It defines "Borrower" as South Cape Realty Trust and the Debtor, and includes all co-signers and co-makers signing the Note.[19]

The third ("CCC 3 Mortgage") secured a note ("CCC 3 Note") in which "Borrower" is defined as the Debtor as Trustee of the CCVR Trust and the Debtor.[20] The CCC 3 Mortgage defines "Grantor" as the Debtor as Trustee of the CCVR Trust and "Borrower" as the CCVR Trust and the Debtor and includes all co-signers and co-makers signing the note.[21]

---

[15] I do not consider at this time the nature or adequacy of the new value or the manner in which it must be offered. *See* Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship, 526 U.S. 434 (1999).
[16] PTS ¶ IIB.
[17] *Ibid*.
[18] PTS ¶IIC.
[19] *Ibid*.
[20] PTS ¶IIF.
[21] *Ibid.*

Each of the CCC mortgages contains the following provision:

> CROSS COLLATERALIZATION. In addition to the Note, this Mortgage secures all obligations, debts and liabilities, plus interest thereon, of Borrower to Lender, or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated whether Borrower or Grantor may be liable individually or jointly with others, whether obligation as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.[22]

Subsequent to the grant of the three notes and mortgages to Cape Cod Bank, Debtor individually and as trustee of various trusts, including the CCVR Trust and the South Cape Trust, granted a note and mortgage to Corinth.[23]

Corinth first argues that the cross-collateralization clauses are ineffective because the obligations sought to be brought within the mortgage are those of other entities.[24] This is an incorrect statement of Massachusetts law.[25]

Corinth further contends that the dragnet clause cannot be used to pay the unsecured deficiency claims of Cape Cod Bank ahead of the validly secured claims of Corinth.[26] Alternatively, it argues that if the dragnet clause is effective to render its claim substantially unsecured, the amount of its unsecured claim, in Class 8, would result in a negative voting class.

---

[22] PTS ¶IIG.
[23] PTS ¶IIH.
[24] Corinth Investors Trust's Objection to Confirmation of the Debtor's Amended Plan Of Reorganization, Docket No. 162 ("Corinth Objection") ¶28.
[25] Perry v. Miller, 330 Mass. 261, 263, 112 N.E.2d 805 (1953) (collecting earlier cases).
[26] Memorandum in Support of Corinth Investors Trust's Objection to Confirmation of Debtor's Amended Plan of Reorganization, Docket No. 214 ("Corinth Memo").

7

In Massachusetts, dragnet clauses have long been recognized. "The guiding principle in construction of a dragnet clause in a mortgage is the determination of the intent of the parties in view of the particular circumstances and the language employed in the mortgage."[27] As Judge Saris has pointed out, "dragnet clauses are generally enforced, but because their apparent coverage is so broad, and because the mortgagor is often unaware of their presence or implications, the courts tend to construe them narrowly against the mortgagee."[28]

In the present case, the language used is quite explicit --- the mortgage was also intended to secure all further indebtedness, of whatever nature, of the "Borrower," and that term is broadly defined. It is certainly true that "Dragnet clauses are frequently included in the printed language of mortgages drafted by mortgagees. They are seldom the subject of negotiation, and may go entirely unnoticed by the mortgagor until the mortgagee attempts to enforce them."[29]

Whether the Debtor, in her individual or trustee capacity, was aware of the dragnet clause, Corinth's mortgage came after the three mortgages to Cape Cod Bank. The issue would be more complex but for additional language which appears in the mortgages:

> Joint and Several Liability. All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and

---

[27] Financial Acc. Corp. v. Garvey, 6 Mass.App.Ct. 610, 613, 380 N.E.2d 1332, 1335 (1978).
[28] Foxborough Sav. Bank v. Ballarino (*In re* Ballarino), 180 B.R. 343, 346 (D. Mass. 1995)( quoting 2 GRANT S. NELSON AND DALE A. WHITMAN, REAL ESTATE FINANCE LAW § 12.8 (5th ed. 2010) ("Nelson & Whitman")).
[29] Nelson and Whitman, § 12.8.

8

every Borrower.  This means that each Borrower and Grantor *signing below* is responsible for all obligations in this Mortgage.[30]

The words "signing below," absolutely unessential in a severability clause, were, nonetheless, inserted in the printed form by the mortgagee.  Under the ancient rule of *contra proferentem*, they must serve to restrict to meaning of "Borrower" to those actually signing the mortgage.  Since none did so, the debts cannot be cross-collateralized.

The result of this conclusion is to alter Class 6 voting rights, depending upon valuation of the various items of collateral.  Analysis must await the further hearing.

*Conclusion*

As this is a preliminary decision, no final order will be entered.  A final evidentiary hearing is scheduled for Hyannis on May 13, 2011, at 10.00 a.m.

*[signature]*

_____
William C. Hillman
United States Bankruptcy Judge

March 8, 2011

---

[30] Copied from the 2004 mortgage, Book 18914, Page 225, attached to Corinth Memo as Exhibit B (emphasis added).  Identical language appears in the other two mortgages, Corinth Memo Exhibits C and D.